IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN J. HARDEGGER,                                CV. 07-1787-MA

        Petitioner,                        OPINION AND ORDER

    v.

MARK NOOTH, Superintendent,
Snake River Correctional
Institution,

        Respondent.


Anthony D. Bornstein
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, Oregon, 97204

    Attorney for Petitioner

JOHN KROGER
Oregon Attorney General
LESTER R. HUNTSINGER
Senior Asst. Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon, 97301-4096

    Attorneys for Respondent


MARSH, Judge


1 -- OPINION AND ORDER

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas petition is denied, and this proceeding is dismissed, with prejudice.

## BACKGROUND

On September 20, 2001, petitioner's mother, Barbara Hardegger, was murdered. At the time of his mother's death, petitioner was seventeen years old. According to police investigations, the underlying facts of the murder are as follows:

> Petitioner's mother, Barbara, had initiated divorce proceedings against petitioner's father after several years in an unhappy marriage. On September 20, 2001, Barbara planned to spend the night at her home, which she shared with her husband and their two sons, on the advice of her attorney. When Barbara arrived at the residence, petitioner's father sprayed her with pepper spray and their eldest son, 17-year-old petitioner, used a stun-gun to disable her. She was then bound, gagged, and placed in a tarp which was already laid out in preparation. Barbara was then taken to a remote location and buried alive in a hole that had previously been dug by petitioner and his father. Prior to her being buried alive, Barbara managed to raise her head out of the dirt. At this time petitioner placed his foot over her head and held it down so that she could continue to be buried alive. Resp. Exh. 145 at 1-2; see also Resp. Exhs. 107 at 3-4, 148 at 5 & 9 & 149.

The following evening, petitioner's father, Gary Hardegger, telephoned the emergency dispatch center and the sheriff's office, and stated that he had done something terrible to his wife, and that they could find her near Wolf Creek Road. Resp. Exhs. 129 &

2 -- OPINION AND ORDER

143 at 7. Gary Hardegger eventually directed police to the location of Barbara Hardegger's body. Resp. Exh. 143 at 7.

Michael Russell, petitioner's cousin, testified before a grand jury that petitioner confessed to him that he had participated in the murder of his mother. Resp. Exh. 123. On October 3, 2001, the grand jury returned a three count indictment charging petitioner with the crimes of Aggravated Murder, Felony Murder, and Kidnapping in the First Degree.

On August 29, 2002, petitioner signed a Petition to Consent to be Found Guilty by Stipulated Facts Trial on the charge of Felony Murder, and a Waiver of Jury Trial. Resp. Exh. 103. At the conclusion of the stipulated facts trial, petitioner was found guilty of Felony Murder. Resp. Exh. 106. Petitioner was sentenced to life imprisonment, with a 25-year minimum sentence. Resp. Exh. 107 at 11. Petitioner's conviction was affirmed on appeal. State v. Hardegger, 193 Or. App. 329, 92 P.3d 767 (2004), rev. denied, 337 Or. 182 (2004).[1]

Petitioner sought state post-conviction relief, alleging that he received ineffective assistance of counsel. The post-conviction court denied relief, the Oregon Court of Appeals summarily

---

[1] Petitioner's father, Gary Hardegger, pled guilty to Aggravated Murder and was sentenced to life imprisonment, with a 30-year minimum. Gary Hardegger currently has a federal habeas corpus proceeding challenging his conviction pending before this court. See Hardegger v. Belleque, 09-242-ST.

3 -- OPINION AND ORDER

affirmed, and the Oregon Supreme Court denied review. In the instant proceeding, petitioner raises nine grounds of ineffective assistance of counsel.

## DISCUSSION

### I. Procedural Default.

Respondent moves the court to deny habeas relief as to grounds for relief 1.6 through 1.9 on the basis that petitioner procedurally defaulted his available state remedies. Petitioner offers no argument to the contrary.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1); Smith v. Baldwin, 510 F.3d 1127, 1137-38 (9th Cir. 2007), cert. denied, 129 S.Ct. 37 (2008); Carter v. Giurbino, 385 F.3d 1194, 1196 (9th Cir. 2004), cert. denied, 543 U.S. 1190 (2005). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

If a petitioner procedurally defaults his federal claims in state court, federal habeas relief is precluded absent a showing of cause and prejudice, or that failure to consider his federal claims

4 -- OPINION AND ORDER

will result in a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Smith</u>, 510 F.3d at 1139.

Petitioner's ineffective assistance claims 1.6 through 1.9 (failing to file pretrial motions, failing to prepare for trial, failing to adequately inform petitioner of ramifications of plea negotiations, and not objecting to Measure 11 sentence) were raised in his amended petition for post-conviction relief, but not on appeal from the denial of post-conviction relief.  The time for doing so has expired, and petitioner cannot again seek state post-conviction relief.  O.R.S. 138.550(3) & 138.650.  Accordingly, those claims are procedurally defaulted.  Petitioner offers no basis to excuse the procedural default.  Consequently, habeas relief is precluded as to grounds 1.6 through 1.9.

**II.  <u>The Merits</u>.**

   **A.  <u>Ground 1.1</u>.**

In his first ground for relief, petitioner alleges that trial counsel was ineffective for failing to "investigate the legal circumstances of the Petitioner's arrest, arraignment, indictment, and/or discoverable information in an effort to effectively prepare for preliminary hearings."  The post-conviction court rejected this claim, concluding that trial counsel "adequately investigated the legal circumstances of petitioner's arrest, arraignment, indictment and discoverable information."  Resp. Exh. 157 at 11.

Petitioner fails to address this ground for relief in his supporting memorandum. Consequently, petitioner has failed to rebut the post-conviction court's factual findings with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). The post-conviction court's findings of fact are presumed correct and habeas relief is not warranted as to this ground.

**B.   Grounds 1.2 through 1.5.**

   **1.   Background.**

Petitioner's grounds for relief 1.2 through 1.5 all pertain to trial counsel's alleged failure to conduct an adequate investigation.[2]  Petitioner alleges:

> (2) Trial counsel failed to have state's key witness Michael Russell called to the stand to testify. Michael Russell had recanted on his statements of the confession of Petitioner to police officers. * * * The report plainly shows that Michael Russell was not going to testify or that he even remembers what he had actually told officers. This should have been brought forward to the court and not just brushed under the carpet.
>
> (3) Trial counsel failed to properly investigate potential witnesses when he neglected to dispatch an investigator to investigate or otherwise examine people that Petitioner brought to his attention; specifically including but not limited to alleged witnesses of the crime and/or alleged victims. * * *
>
> (4) Trial counsel should have shown that Petitioner had an alibi at the time of the crime. Petitioner was at his

---

   [2] To the extent that petitioner relies upon Article 1, Section 11 of the Oregon Constitution, habeas relief is not warranted. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Bonin v. Calderon, 77 F.3d 1155, 1161 (9th Cir.), cert. denied, 516 U.S. 1143 (1996).

    home with his brother (John Hardegger) on the evening of September 21, 2001 * * *.

    (5) Trial counsel failed to have a private investigator take statements from Jimi Duke for she was the last person who was to have seen Barbara Hardegger alive the early morning of Friday, September 21, 2001, to establish a last known[n] possible time the victim was seen alive. This could have strengthened the alibi for the Petitioner. Amended Petition at 8-10.

In a deposition taken prior to the post-conviction proceeding, petitioner provided testimony concerning his allegations of ineffective assistance of counsel. Petitioner reiterated that trial counsel failed to talk to his brother, John Hardegger; his cousin, Michael Russell; his aunt, Mary Russell; his uncle, Gene Pierson; and a couple unidentified friends. Resp. Exh. 152 at 6-11; see also Resp. Exh. 156 at 5.

According to petitioner, his brother would have provided an alibi by testifying that he would have heard petitioner leave the family home on the night of the murder; an interview of his cousin Michael would have revealed that he did not intend to appear at trial; his aunt and uncle would have testified about Michael's statements to the police; and Jimi Duke would have provided a time line for the night of the murder (having been the last person to see Barbara Hardegger alive). Resp. Exh. 152 at 6-13; see also Resp. Exh. 118 at 3-4.

Petitioner's trial attorney, Mark Sabitt, submitted an affidavit in the state post-conviction proceeding attesting to the

7 -- OPINION AND ORDER

fact that he, co-counsel, and/or their investigators contacted all of the individuals identified by petitioner:

> Ken Feldman and I worked hard to investigate petitioner's case. We also hired two investigators, Mike Whitney and Denise Johnson. Whitney is an ex-Eugene police detective with many many years of experience, and he is generally regarded as one of the best investigators available. He writes a very thorough report. Denise was our mitigation investigator. She is very well regarded as an investigator and is also very proficient.
>
> Mike Whitney interviewed petitioner's brother, John. John offered no alibi for petitioner. John told Whitney that the night of the alleged murder John went to bed at 10:00 p.m. and woke up at 6:00 a.m. and that he was a sound sleeper. He said that Brian was up when he went to bed and asleep when John woke up. Ken Feldman and Denise also interviewed John. John provided nothing that was exculpatory. Moreover, petitioner and his family were very protective of John and did not want him involved in the case. Nonetheless, we had plenty of interviewing time with John.
>
> Mike Whitney also interviewed petitioner's cousin, Michael Russell. Michael Russell told Whitney what he had told the police. We scheduled several meetings for Ken Feldman and or I to meet with Michael to evaluate his demeanor and credibility. Unfortunately, Michael did not show. In general, we had trouble contacting Michael. His mother, Mary Russell, acted as a go-between with us. In contrast, Michael appeared to be cooperating with the State. Whitney observed Michael meeting with investigators from the District Attorney's Office.
>
> Michael Russell testified at the Grand Jury. The State was prepared to impeach Michael with Grand Jury testimony if he waffled on the stand and had a Grand Juror or Grand Jurors subpoenaed for that purpose. Michael was the centerpiece of the State's case against petitioner. He was able to provide incredibly detailed facts concerning the death of Barbara Hardegger to the police. Michael would have been a credible witness because he was good friends with petitioner, had no reason to make things up, and was not anxious to provide testimony against Brian.

8 -- OPINION AND ORDER

> We thoroughly investigated all potential witnesses, talking to everyone we thought might have information helpful to petitioner.
>
> We talked to petitioner's aunt, Mary Russell many times. Ken Feldman and Denise Johnson also went out to her house. She did not provide any exculpatory evidence although she had many opportunities to do so.
>
> Whitney interviewed petitioner's uncle Gene Pierson on October 4, 2001, but the interview yielded nothing that would help petitioner's case. Gene had contacted the police concerning statements petitioner made to Michael Russell about the death of petitioner's mother.
>
> Mike Whitney did contact Jimi Duke in an attempt to interview her. However, she was very hesitant to talk to us, and Whitney was unable to interview her. In contrast, she did talk to the police. Barbara Hardegger had dropped her off at Duke's home the night Barbara was killed. Resp. Exh. 155 at 1-3; <u>see also</u> Resp. Exhs. 137, 138 & 141.

The investigators' reports were submitted as evidence at the post-conviction proceeding. Resp. Exhs. 136-142. According to those reports, while John Hardegger stated that he would have heard petitioner leave the family home on the night of the murder, he also described himself as a heavy sleeper and stated that cars are parked far enough from his bedroom that he would not have heard someone drive off. Resp. Exh. 137. The reports reflect that investigators made numerous attempts to interview Michael Russell. Resp. Exh. 138.

Several declarations also were submitted by petitioner to the post-conviction court. Resp. Exhs. 119-122. Mark Russell declared that his brother, Michael Russell, told him after testifying to the grand jury that petitioner had made some statements to him, but

9 -- OPINION AND ORDER

Michael did not provide any details. Resp. Exh. 119. He also states that Michael Russell is serving a prison term for selling methamphetamine, and is not a truthful person. Id. In John Hardegger's declaration, he reiterates his belief that he would have heard petitioner leaving the house the night of the murder. John also states that Michael Russell told him that petitioner had told him some bad things. Resp. Exh. 120. Mary Russell, Michael Russell's mother, states in her declaration that according to what Michael told her, petitioner did not confess to Michael but rather only talked about what Gary Hardegger had done to Barbara Hardegger. Resp. Exh. 121.

Based on the foregoing, the post-conviction court made the following findings of fact:

> Petitioner's cousin Michael Russell testified to the Grand Jury concerning petitioner's inculpatory conversation with him.
>
> The State was prepared to call a grand juror to impeach Michael Russell if necessary at trial.
>
> Petitioner has failed to prove that Michael Russell would not be available to testify at trial.
>
> Trial counsel was not inadequate in their investigation of Michael Russell.
>
> Trial counsel adequately investigated all potential witnesses.
>
> Trial counsel adequately investigated a potential alibi defense. Petitioner's brother John offered no alibi for petitioner.
>
> Trial counsel was not inadequate in their investigation of Jimi Duke. Resp. Exh. 157 at 11-12.

10 -- OPINION AND ORDER

Based upon the foregoing findings of fact, the post-conviction court concluded that trial counsel did not render ineffective assistance of counsel. Id. at 12.

2. **Analysis**.

A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness; and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Strickland v. Washington, 466 U.S. 668, 687-88 (1987); Cooper-Smith v. Palmateer, 397 F.3d 1236, 1243-44 (9th Cir.), cert. denied, 546 U.S. 944 (2005) (applying Strickland to ineffective assistance claim arising out of stipulated facts trial); Franklin v. Johnson, 290 F.3d 1223, 1233 (9th Cir. 2002) (same).

To prove deficiency of performance, petitioner must show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. In this context, the issue is whether counsel made a reasonable investigation, or made a reasonable decision that a particular investigation was unnecessary. Id. at 691; Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), amended on denial of reh'g, 253 F.3d 1150 (9th Cir. 2001). "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would

11 -- OPINION AND ORDER

be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails." Id.

In the instant proceeding, petitioner has failed to rebut, with clear and convincing evidence, the post-conviction court's findings of fact that trial counsel adequately investigate all potential witnesses, including Michael Russell, John Hardegger, and Jimi Duke. See 28 U.S.C. § 2254(e)(1). Further, petitioner has failed to rebut the post-conviction court's factual findings that petitioner's brother offered no alibi, and that petitioner failed to prove that Michael Russell would not have been available to testify at trial. Id.

In light of these factual findings, and in the absence of a showing that further investigation would have produced anything of significance, petitioner has failed to demonstrate that trial counsel's investigation was deficient. Accordingly, the post-conviction court's conclusion that trial counsel did not render ineffective assistance of counsel is neither contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).[3]

---

[3] Because I find that petitioner has failed to satisfy the first prong of Strickland (deficient performance), habeas relief is not warranted regardless of whether petitioner can satisfy the prejudice prong of Strickland. See Cooper-Smith, 397 F.3d at 1244 n.38. For this reason, I need not decide whether the prejudice prong, in this context, requires a showing that there is a reasonable probability that, but for counsel's deficient performance, *the results of the proceeding would have been different* (see Franklin, 290 F.3d at 1237), or that, petitioner *would not have agreed to a stipulated facts trial, but instead*

12 -- OPINION AND ORDER

## CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) is DENIED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this _10_ day of August, 2009.

                                   _/s/  Malcolm F. Marsh_____
                                   Malcolm F. Marsh
                                   United States District Judge

---

*would have insisted on going to trial* (see Chavez v. Lampert, 03-1047-ST (D.Or. 2006), aff'd, 2007 WL 3037745 (9th Cir. 2007), petition for cert. filed, 128 S.Ct. 1716 (2008) (applying Hill v. Lockhart, 474 U.S. 52, 59 (1985)).